JaPITCHER, Judge.
In this appeal, plaintiff, Walter George, Jr., appeals from a hearing officer’s decision, finding that his employer correctly reduced his benefits to supplemental earnings benefits. We affirm.
FACTS
Plaintiff was employed as a laborer with Broadmoor Construction Company (Broad-moor) in Metairie, Louisiana. On January 4, 1993, while working, plaintiff injured his back when he “picked up on [a mortar] mixer.” Plaintiff reported the injury to his foreman, Danny Bardwell. Shortly after the injury, plaintiff went to his home in Springfield, Louisiana.
On the following day, plaintiff went to Lal-lie Kemp Hospital and was examined by a doctor and diagnosed with a back sprain. Subsequently, upon the suggestion of Broadmoor’s workers’ compensation insurer, F.A. Richard and Associates, Dr. Marvin Clifton, a neurosurgeon, began treating the plaintiff for lower back pain on January 19, 1993.[1] Dr. Clifton had an MRI scan performed on plaintiff at the Seventh Ward Hospital and diagnosed plaintiff with a ruptured lumbar disc at the L4r-5 level. Dr. Clifton treated plaintiff with conservative care for several months. Following this care, Dr. Clifton opined that plaintiffs injury was going to require surgical intervention. Because Dr. Clifton had sustained a horseback riding injury, he referred plaintiff to Dr. Warren Williams, a neurosurgeon.
Dr. Williams began treating plaintiff for lower back pain on September 14, 1993. Although Dr. Williams performed plaintiffs surgery, plaintiff remained under Dr. Clifton’s care and treatment. Dr. Williams diagnosed plaintiff with a lumbar ^radiculopathy and treated plaintiff with conservative care. On plaintiffs October 28, 1993 visit, Dr. Williams felt that plaintiff would need surgery, and plaintiff desired to have the surgery, hoping that it would alleviate his pain. On March 2, 1994, Dr. Williams performed a left hemilaminectomy and left discectomy surgery at the L4-5 level. Following his surgery, plaintiff continued follow-up visits with both Drs. Clifton and Williams.
On plaintiffs November 8,1994 office visit, Dr. Williams felt that plaintiff had reached maximum medical improvement and could return to light duty work with restrictions against long periods of sitting or standing and excessive or frequent climbing, stooping, crawling and bending. Dr. Williams released plaintiff from his care on June 22, 1995. As of July 18, 1995, Dr. Clifton felt that plaintiff had reached maximum medical improvement and could return to light duty work with restrictions against sitting or standing for more than a half hour, repetitive bending of the lower back and lifting more than 20 to 30 pounds.
At the request of Julie Smith, a rehabilitation consultant with F.A. Richard and Associates, David Heap, a physical therapist with the Center for Function Performance, saw plaintiff on August 29, 1994, for the purpose of evaluating him to determine in what capacity plaintiff could safely return to work. *24 Plaintiff was scheduled to undergo two days of testing. However, plaintiff was only evaluated for three hours on the first day and did not return for further evaluation. Based upon the three hour evaluation, Mr. Heap found a number of inconsistencies throughout plaintiffs testing. Mr. Heap performed a Waddell’s test which indicated that plaintiff was magnifying his symptoms. Mr. Heap indicated that he could not identify any mus-culoskeletal deficiency which could account for the types of pain plaintiff was having.
F.A. Richard and Associates hired Nancy Springier, a vocational rehabilitation counsel- or with Farrell Health Care Management, to assess plaintiff for ^appropriate employment positions. Ms. Springier began working on plaintiffs file in September of 1994, after the file was transferred to her from another employee, Richard Smith, who had initially met with plaintiff and learned plaintiffs work history and educational background. Ms. Springier contacted plaintiff by telephone and left messages for him, but plaintiff never returned Ms. Springler’s telephone calls. At this time, Ms. Springier was instructed to close plaintiffs file.
In March, 1995, Ms. Springier reopened plaintiffs file, attempting to proceed with rehabilitation. Ms. Springier had received medical reports from both Drs. Clifton and Williams indicating that plaintiff was capable of performing light duty work with restrictions and was at maximum medical improvement post-surgery.
Ms. Springier conducted a labor market survey in plaintiffs geographical area, locating eight possible jobs within the physical restrictions outlined by Dr. Clifton and Dr. Williams. These job descriptions were sent to both Drs. Clifton and Williams. Dr. Clifton approved the following jobs: security guard, production worker-candy store, customer service, and bagger. Dr. Williams approved the following jobs: auto parts deliverer, deli cutter-slicer, bagger, customer service, production worker-candy store, cashier, security guard, and assembly line tech. Ms. Springier sent a letter dated April 13, 1995, informing plaintiff of the available jobs along with the name of each employer and how plaintiff could apply for the position. Shortly thereafter, Ms. Springier closed plaintiffs file.
F.A. Richard and Associates paid plaintiff temporary total disability benefits in the amount of $172.67[2] per week until May, 1995, when it reduced the temporary total disability benefits to supplemental earnings benefits in the amount of $59.33 Isper week. Plaintiff filed a claim with the Office of Workers’ Compensation on August 15, 1995, alleging that Broadmoor paid the incorrect amount in temporary total disability benefits and supplemental earnings benefits.
An administrative hearing was held on February 28, 1996. At the hearing, plaintiff contended that he did not receive any rehabilitation and that Broadmoor wrongfully reduced his temporary total disability benefits to supplemental earnings benefits. Following the hearing, the hearing officer rendered a judgment in favor of Broadmoor, finding that Broadmoor paid plaintiff workers’ compensation benefits in accordance with the statute. Plaintiff now appeals, arguing that the trial court erred when it determined that plaintiff had received adequate and sufficient vocational rehabilitation, thereby eliminating his entitlement to temporary total disability benefits.
VOCATIONAL REHABILITATION SERVICES
Plaintiff contends that Broadmoor failed to provide him with meaningful vocational rehabilitation services, and he is entitled to receive temporary total disability benefits until he has received meaningful vocational rehabilitation services.
In Louisiana, when an employee suffers a compensable injury which precludes him from earning wages equal to those earned pre-injury, then he shall be entitled to *25 prompt rehabilitation services. LSA-R.S. 23:1226(A). Temporary total disability benefits paid pursuant to LSA-R.S. 23:1221(1) shall include such period as the employee may be receiving training or education under a retraining program pursuant to this section. LSA-R.S. 23:1226(F); Thibodeaux v. Robinswood School, 93-1130, p. 3 (La.App. 3rd Cir. 4/6/94); 635 So.2d 585, 587, writ denied, 94-1188 (La.6/24/94); 640 So.2d 1355.
LSA-R.S. 23:1226(B) provides as follows:
|fiB. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant’s education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
(2) Whenever possible, employment in a worker’s local job pool must be considered and selected prior to consideration of employment in a worker’s statewide job pool.
(3) The employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for worker’s compensation benefits.
By Act No. 454 of 1989, the Louisiana legislature amended the rehabilitation provisions of § 1226. Before the amendment, the objective of rehabilitation was to educate and increase the job marketability of employees who cannot return to their former positions. The amended statute no longer extensively relies on vocational education and instead seeks a minimum of retraining, as stated in LSA-R.S. 23:1226(B)(1). Subsection B of LSA-R.S. 23:1226 provides that if the claimant is able to return to his old position, to a modified position, or a related occupation suited to his education and marketable skills, vocational training is not authorized. Green v. Conagra Broiler Company, 26,599, p. 12 (La.App. 2nd Cir. 3/1/95); 651 So.2d 335, 344.
|7In the instant case, both of plaintiffs treating physicians, Dr. Williams and Dr. Clifton, felt that plaintiff had reached maximum medical improvement and was able to return to light duty work with restrictions.
Ms. Springier, the vocational counselor, conducted a labor market survey, which produced eight possible positions available to plaintiff in his geographical area. Ms. Springier testified that the labor market survey was based upon plaintiffs work experience, education and the doctors’ restrictions. Ms. Springier also noted that plaintiff was tested in both the areas of reading and math prior to the labor market survey.
Ms. Springier testified that she contacted the eight employers personally and received specific information pertaining to each position. Ms. Springier stated that in contacting each employer, she informed them with regards to plaintiff seeking employment and asked if they had a position open. Ms. Springier indicated that once she established the descriptions for these positions, she sent a copy of the descriptions to plaintiffs treating physicians. Subsequently, several of the positions were approved by plaintiffs treating physicians. The evidence reflects that Ms. Springier sent plaintiff a list that contained the name of each employer, the employer’s address and how plaintiff could apply for the position.
Plaintiff testified that he did apply for several of the positions from the labor market survey as well as other positions. Plaintiff stated that he informed each employer of his back condition and was unable to obtain a position. Although plaintiff testified that he applied for several positions, Ms. Springier testified that while working with plaintiff, she was contacted by plaintiff, and plaintiff stat *26 ed that “he wasn’t ready” to go back to work, that he “couldn’t do anything,” and that there was no way he could do those jobs located by Ms. Springier. Ms. Springier indicated that plaintiff told her he was not going to apply for those jobs because he did not feel that he was capable of performing them.
IsAccording to LSA-R.S. 23:1226(B)(1), the “first appropriate option” must be chosen. Under the circumstances, we find that option (c), [returning the claimant to “a related occupation suited to the claimant’s education and marketable skills”] is the first appropriate option in this case. Broadmoor fulfilled its obligation by finding and identifying several related occupations suited to plaintiff’s education and marketable skills. Despite these efforts, plaintiff made several statements to Ms. Springier indicating that he was not ready to go back to work and did not believe he could perform these positions located by Ms. Springier. In these circumstances, further rehabilitative services are not warranted.
Although plaintiff testified that he applied for several positions, his testimony is in direct conflict with Ms. Springler’s testimony that plaintiff told her he would not apply for the positions. Mere conflicts in evidence will not suffice to overturn a hearing officer’s reasonable evaluations of credibility and reasonable findings of fact. Stevens v. Wal-Mart Stores Inc., 27,977, p. 6 (La.App. 2nd Cir. 11/1/95); 663 So.2d 543, 547. Thus, we cannot say that the hearing officer was manifestly erroneous in finding that plaintiffs temporary total disability benefits were correctly reduced to supplemental earnings benefits.
CONCLUSION
For the foregoing reasons, the hearing officer’s judgment, finding that Broadmoor Construction Company correctly reduced plaintiffs benefits to supplemental earnings benefits, is affirmed. Costs of this appeal are assessed to plaintiff, Walter George, Jr.
AFFIRMED.

. Initially, plaintiff was seen by Broadmoor's company doctor, Dr. Morris Fisher, whose office was located in New Orleans. However, Dr. Fisher advised plaintiff to seek treatment closer to his home in Springfield instead of traveling to New Orleans.

. The record reflects that plaintiff first began receiving temporary total disability benefits in the amount of $169.67 per week. Frank Ryals, litigation manager for F.A. Richard and Associates, testified that plaintiff’s initial temporary total disability benefits were miscalculated. Mr. Ryals further stated that the amount was corrected and plaintiff received back pay for the incorrect payments.