415 So.2d 511 (1982)
Paul SALVADOR, Jr.
v.
SLIDELL INDUSTRIES, INC., et al.
No. 14857.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*512 Julian J. Rodrigue, Covington, for plaintiff-appellee.
William R. Seay, Jr., Metairie, for defendants-appellants.
Before LEAR, CARTER and LANIER, JJ.
LANIER, Judge.
This is a workmen's compensation suit, filed on April 3, 1980, seeking benefits for total and permanent disability, all unpaid medical bills and expenses and statutory penalties and attorney fees. An answer of general denial was filed on May 12, 1980. The trial of this matter was held and completed on March 26, 1981. Pursuant to written reasons dated March 31, 1981, the trial judge rendered judgment in favor of Salvador for total and permanent disability payments of $141.00 per week, $1,558.83 for unpaid medical bills and expenses, statutory penalties, a $5,000.00 attorney fee and all costs. This suspensive appeal followed.

I. FACTS
Prior to April 6, 1979, Paul P. Salvador, Jr. was a mechanic in the research and development department of Slidell Industries, Inc. (hereinafter referred to as Slidell) in Slidell, Louisiana. Salvador's duties required him to be involved in the assembling, maintaining and repairing of various machines (primarily sewing machines) associated with Slidell's manufacturing process, and to help in the design of labor saving devices. This work was primarily heavy manual labor. At all times pertinent to these proceedings, Liberty Mutual Insurance Company (hereinafter referred to as Liberty) was the workmen's compensation insurer of Slidell.
On April 6, 1979, Salvador and a co-employee, Ted Lulei, were directed to go to New Orleans on company business and to pick up freight at the Red Ball Express Company on their return trip. The two workers proceeded to the Red Ball Express yard, but, due to a strike in progress, were required to unload the freight themselves and place it in the Slidell vehicle. During the course of this unloading operation, Salvador attempted to stop a box weighing *513 over 200 pounds from falling out of the freight truck. He felt a snap and pain in his back. He complained immediately to Lulei. He reported the incident to Slidell when he returned to the Slidell factory. Because April 6, 1979, was a Friday, Salvador did not seek medical attention on that date, but decided to wait through the weekend to see what developed.
On April 9, 1979, Salvador went to work but was unable to do his usual duties because of pain in his back. Salvador made an appointment with Dr. Robert Weiss, Jr. who treated him from that date until June 1, 1979.
During the next three weeks, Salvador attempted to perform his duties with Slidell but was unable to do the heavy labor normally associated with his job. He only performed light duties and needed assistance from other employees. During the last week of April, 1975, Salvador's employment was terminated by Slidell for "personality conflicts." Prior to this time, Salvador had worked for Slidell for over five years with no absences from work.
On June 1, 1979, Dr. Weiss referred Salvador to Dr. Warren M. Barnes. Between June 1, 1979 and September 14, 1979, Dr. Barnes treated Salvador on nine occasions. He diagnosed Salvador's condition as dorsolumbar strain superimposed on gout and arthritis. Dr. Barnes referred Salvador to a Dr. Biundo and subsequently to Dr. William M. Pusateri. Dr. Pusateri examined and treated Salvador between November 21, 1979 and April 18, 1980. He diagnosed his condition as degenerative arthritic changes in the thoracic spine.
During the period of April 12, 1980 to December 12, 1980, Salvador saw his family doctor, Frank J. Guidry, on eight occasions. Dr. Guidry diagnosed Salvador's condition as acute back trauma precipitating chronic back pain.
After receiving a report from Dr. Barnes, dated September 25, 1979, Liberty terminated Salvador's compensation benefit and medical payments. It was stipulated by the parties that during the period from May 2, 1979 through September 26, 1979, Liberty paid to Salvador compensation benefit payments at the rate of $141.00 per week for a total of $2,961.00. Liberty further paid medical expenses on behalf of Salvador in the sum of $501.00. It was further stipulated by the parties that as of the date of trial, Salvador had unpaid medical bills and expenses in the sum of $1,558.83. Salvador has not been gainfully employed since he was discharged by Slidell in April of 1979.

II. DISABILITY
The trial judge found that Salvador was totally and permanently disabled within the purview of La.R.S. 23:1221(2). The trial judge made the following observations in his written reasons for judgment:
"Medical testimony indicates that Mr. Salvador was the victim of substantial degenerative arthritic condition in his spine. It had been entirely asymtomatic prior to the accident. It is clear from the medical and lay testimony that the accident set fire to the pre-existing arthritic condition. Lay testimony indicates that the pain associated with Mr. Salvador's lower back is more than substantial or appreciable. It is constant, great, and debilitating. The pain is concentrated at the base of the spine and down his hips. He cannot cross his legs or tie his shoes without lifting his legs with his arms. During the trial, Mr. Salvador exhibited to the Court the problems encountered in leg crossing manuevers, (sic) as well as tying his shoes. In addition to the complaints of Mr. Salvador while executing these manuevers, (sic) there was objective signs of pain associated therewith, as evidenced by the discoloration in his face.
"Mr. Salvador, his wife, and daughter-in-law testified concerning his inability to assist in household duties, as well as his ever present complaints of pain and the need of assistance at certain times to do such nominal manuevers (sic) as getting out of a chair.
"This Court is clearly convinced that Mr. Salvador's disability is related to the April 6, 1979, accident, which occurred during the course and scope of his employment. *514 The Court is further convinced that this plaintiff, because of the ever present pain, will never be able to return to any type work."
It is well settled in the law that a finding of substantial pain requires that an employee be held disabled. Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La. 1980) and the cases cited therein. The evidence of record substantiates the fact that Salvador is constantly in pain, even when not working. Drs. Barnes, Pusateri and Guidry are all in agreement that the accident of April 6, 1979 aggravated and triggered a pre-existing, asymtomatic arthritic condition in Salvador's back. According to the testimony of Dr. Pusateri, some of the vertebrae in Salvador's thoracic spine have calcified and fused together as a result of this condition. Drs. Barnes and Guidry were both of the opinion that Salvador cannot perform any work. Dr. Pusateri was of the opinion that Salvador was unable to do heavy manual labor, but perhaps could perform some sedentary duties associated with light work employment. Salvador testified that he has been unable to do any work whatsoever since he was released from Slidell, that he is unable to bend over, stand for a long period of time or sit for a long period of time without incurring pain in his spine. He cannot drive an automobile, except for short distances, and he has great difficulty in tying his own shoes. He cannot cross his legs without using his arms for assistance. His wife and daughter-in-law testified in support of these observations. The trial judge obviously accepted the testimony of Drs. Guidry and Barnes concerning Salvador's total disability, and, obviously, accepted the testimony of Salvador, his wife and his daughter-in-law with reference to the amount of pain that he was suffering.
There is no error in these factual findings of the trial judge. Meeks v. State Farm Fire & Casualty Company, 402 So.2d 138 (La.App. 1st Cir. 1981).[1]

III. STATUTORY PENALTIES
Liberty terminated Salvador's benefit and medical compensation payments effective September 26, 1979, on the basis of the report of Dr. Barnes, dated September 25, 1979. In that report Dr. Barnes diagnosed Salvador's condition as dorsolumbar strain superimposed on gout and arthritis. Dr. Barnes did not fill out the blanks applicable to ability to return to light duty or full duty. He indicated that Salvador was discharged on September 14, 1979 "To return as necessary." He further indicated that Salvador "will continue to be followed by Dr. Biundo...". On the question of present condition, he referred Liberty to his previous correspondence and he described permanent disability as "NONE FROM ORTHOPAEDIC STANDPOINT."
Almost one year later, by letter dated September 24, 1980, Liberty made the following inquiries of Dr. Barnes:
"In correspondence from your office dated September 25, 1979, I note that there was no permanent partial disability assigned to this injury from an Orthopedic standpoint. The diagnosis was noted as dorsolumbar strain superimposed on gout and arthristis (sic). In your opinion, is Mr. Salvadore (sic) still suffering from the injuries sustained on April 6, 1979? Particularly, is Mr. Salvadore's (sic) pre-existing condition of gout and arthristis (sic) the main factor preventing him from returning to work.
"Finally, would it be reasonable for me to conclude that the dorsolumbar strain has resolved and the patient recovered from the strain itself."
Liberty received the following reply to this communication:
"11-1-80: Rod: The patient's dorsolumbar strain has resolved. Please check with Dr. Biundo regarding his other problems. Dr. Barnes has not seen him since 9-14-79.
 S."
*515 If a compensation insurer is arbitrary and capricious in terminating compensation payments and benefits to a worker, it is liable for statutory penalties and attorney fees. La.R.S. 23:1201.2. After receiving the Barnes' report of September 25, 1979, Liberty terminated compensation benefits without further inquiries. This report, however, is inconclusive concerning Salvador's ability to work. The information concerning light duty and full duty are left blank. Although he was discharged, there is a notation that he is to return as necessary. The report advises that Salvador has been referred to Dr. Biundo for further treatment, and although the report rules out permanent disability from an orthopedic standpoint, it does not rule out temporary disability or permanent disability for reasons other than orthopedic.
It is well settled in the law that injured employees may not be cut off of compensation benefits on the basis of inconclusive medical reports. It is incumbent upon insurers to make reasonable efforts to ascertain the employees' exact medical condition at the time compensation benefits are terminated. Wiley v. Southern Casualty Insurance Company, 380 So.2d 214 (La.App. 3rd Cir. 1980); Norris v. Southern Casualty Insurance Company, 342 So.2d 874 (La.App. 3rd Cir. 1977); Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976); Horn v. Vancouver Plywood Company, 322 So.2d 816 (La.App. 3rd Cir. 1975). Clearly, Liberty had questions concerning Salvador's condition or it would not have sent the letter of September 24, 1980. In his deposition, Dr. Barnes unequivocally testified that as of September 14, 1979, Mr. Salvador was unable to return to work. Had Liberty made a simple telephone call to Dr. Barnes, it could have obtained this information. Liberty made no attempt to contact Dr. Biundo or his successor, Dr. Pusateri. The reply dated November 1, 1980 received by Liberty does not absolve it in this case. Liberty was directed to contact Dr. Biundo with reference to Salvador's other problems. Further, the reply is initialed "S.", which is not Dr. Barnes. The trial judge determined as a matter of fact that under all of the circumstances of this case, Liberty was arbitrary and capricious in terminating compensation benefits to Salvador. This factual conclusion is supported by the evidence of record. There is no ground for reversal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

IV. CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] Since the trial judge found as matters of fact that Salvador's medical condition rendered him totally and permanently disabled and that he was constantly in debilitating pain, the facts of this case do not fall within the purview of the "odd lot" worker situation. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Oster v. Wetzel, 390 So.2d 1318 (La.1980).