693 So.2d 1279 (1997)
Andrew GORDON
v.
SANDERSONS FARMS and Helmsman Management, Inc.
No. 96 CA 1587.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1281 Cassandra Butler, Independence, for Andrew Gordon, Plaintiff-Appellee.
Christopher Moody, Hammond, for Sanderson Farms, Inc., Defendant-Appellant.
Before SHORTESS, TYSON[1] and PARRO, JJ.
*1282 SHORTESS, Judge.
Andrew Gordon (plaintiff) sued his former employer, Sanderson Farms, Inc. (defendant), for workers' compensation benefits.[2] The workers' compensation hearing officer found plaintiff proved that he was injured in a work-related accident on November 16, 1994, that he was temporarily totally disabled, and that he was due workers' compensation benefits, medical expenses, and vocational rehabilitation. The hearing officer also found defendant acted arbitrarily and capriciously in its dealings with plaintiff and awarded plaintiff penalties, interest, and attorney fees of $3,000.00. Defendant appeals.
Defendant contends the hearing officer erred in finding that (1) an accident occurred, (2) plaintiff is disabled, and (3) defendant was arbitrary and capricious in terminating plaintiff's benefits. Defendant also contends the hearing officer erred in refusing to permit the introduction of a letter allegedly faxed from plaintiff's treating physician to defendant's claims adjuster.

SHOULD THE LETTER HAVE BEEN ADMITTED?
If the hearing officer committed an evidentiary error which tainted his decision, we would be forced to disregard the hearing officer's findings and conduct a de novo review.[3] Thus, we must first address the evidentiary issue.
The document defendant attempted to introduce and ultimately proffered was a photocopy of a letter dated February 13, 1996, from Angeliki Kleamenakis, defendant's claims adjuster, to Dr. Michael A. Dunn. The letter asked Dunn to review plaintiff's medical records and advise Kleamenakis if plaintiff "was capable of returning to work full duty and when." Scribbled at the bottom of the letter was an unsigned note addressed to "Cindy" which read, "PT released to work full duty as of 12/13/94."
Kleamenakis testified she wrote to Dr. Stephen M. Waldo, a family practitioner who saw plaintiff at defendant's request, and Waldo wrote the note on the bottom of the letter and faxed it back to her. She did not explain why the note was addressed to "Cindy" and stated she had no way of knowing who had actually written the note. Waldo did not testify.
Plaintiff objected to the introduction of this document for two reasons: (1) it was hearsay, and (2) it was not authenticated. The trial court sustained the objection. Defendant contends the document was not hearsay because it was offered to establish defendant's good faith upon termination of benefits and not the truth of the matter asserted.[4] We find this argument unconvincing in light of the date of the letter. Defendant terminated plaintiff's benefits December 1, 1994. The letter to Dunn is dated February 13, 1996, over thirteen months later.
Furthermore, defendant did not even address the issue of authenticity. Defendant failed to offer evidence to support a finding that the document was what defendant claimed it to bea note by Waldo written to Kleamenakis.[5] No one explained why the note purportedly written to Angeliki Kleamenakis was addressed to "Cindy," and Kleamenakis testified she had no way of determining whether the handwriting was Waldo's. Thus, we conclude the hearing officer was legally correct in excluding this document.

DID A DISABLING ACCIDENT OCCUR?
Defendant contends the hearing officer was manifestly erroneous in finding claimant proved a disabling work-related accident occurred. This involves two factual issues: (1) whether an accident occurred, and (2) *1283 whether the accident was disabling. We shall examine the facts surrounding plaintiff's accident and subsequent treatment and then address these issues separately.

Factual Background
Plaintiff worked in defendant's specialty department, loading sixty-five- to seventy-pound boxes of chickens onto a conveyor belt. He testified that on November 16, 1994, he was working a shift that ended at midnight. About 11:00 p.m., he felt a strange pain in his side. He did not report the pain to anyone that night because his shift was almost over and he hoped the pain would go away. He also noted his supervisor usually went to the office to do paperwork toward the end of the shift, and he was not sure if his supervisor was still at the plant.
The next morning he returned to work and told his supervisor he "had felt that pain." His supervisor asked whether he wanted to attempt to work or to go home. Plaintiff said he would like to try to work. About an hour later, at the time of his first break, plaintiff went to the nurse's station. He testified the nurse then called his supervisor. The nurse told him to go home and said she would make him an appointment with a doctor for the next day. However, plaintiff's first visit to a physician on defendant's referral was November 22, 1994, when he saw Waldo.
The evening before plaintiff saw Waldo, he went to the emergency room at Lallie Kemp Medical Center, the state-run charity hospital in Hammond. He complained of pain in his right groin area with intermittent sharp pain to the testicles that had started with lifting heavy boxes at work. The doctor at Lallie Kemp diagnosed a reducible right inguinal hernia.
Brian Stanga, defendant's personnel supervisor, testified defendant's nurse had difficulty contacting plaintiff or gaining his compliance regarding completing an accident report, taking a post-accident drug test, and seeing the company doctor. On November 22, 1994, Stanga went to plaintiff's home in Independence and then drove plaintiff to Waldo's office.
Waldo was unable to find a hernia, despite repeated exams. His assessment was "Epididymitispost-lifting versus infectious." Epididymitis is an inflammation of the epididymis, an elongated cord-like structure along the posterior border of the testis. He advised plaintiff to remain off work for three days and then return to the clinic for reevaluation.
Plaintiff was seen in the outpatient clinic at Lallie Kemp that afternoon, where he was referred back to the emergency room to rule out kidney stones or appendicitis. He returned to the emergency room the next day, November 23.
Plaintiff returned to Waldo's office on Friday, November 25, and was seen by Waldo's partner, Dr. Ted J. Hudspeth. Hudspeth's diagnosis was epididymitis and right abdominal wall strain. He gave plaintiff a form normally used to show when a patient can return to full activities. The words "work/school/PE" were stricken through, and the word "office" was substituted. The form then read: "This is to certify that Andrew Gordon has been under my care from 11-25-94 to 11-30-94. May return to office on 11-30-94. Limitations No work until office visit 11-30-94 at 8:00."
Plaintiff saw Waldo as scheduled on November 30, 1994. Waldo diagnosed abdominal muscle strain and resolving epididymitis. His report of that date states:
The patient feels he is unable to return to work, yet with a simple abdominal muscle strain he should be getting better within the next few days. I would like to have a urologist see him in consult because he was told by the physicians at Lallie Kemp that he had a hernia. If urology does not find any evidence of hernia or worsening epididymitis, I expect him to be able to return to work as of next week and we will see him back on 12/5/94 for final check.
Plaintiff's compensation benefits were terminated the next day, December 1, 1994.
After plaintiff's November 30 appointment, someone in Waldo's office made plaintiff an appointment with a urologist in Baton Rouge for December 2. Plaintiff testified he was notified the evening before the appointment.
*1284 He advised Waldo's office he was having transportation problems and wanted the appointment rescheduled, but that was never done. He tried to drive to Baton Rouge, but his car broke down in Albany.
Plaintiff testified that after missing the appointment in Baton Rouge, he called Waldo's office to confirm his next appointment with Waldo. However, the receptionist told him Waldo said to go back to work and not worry about seeing the doctor. Kleamenakis testified plaintiff's compensation payments were terminated because Waldo released him to return to full duty after he missed two appointments with Waldo. Plaintiff testified, however, that the only appointment he ever missed was with the doctor in Baton Rouge.
After his compensation benefits were terminated, plaintiff continued treatment at Lallie Kemp. He was seen in the emergency room on December 7 and 8, 1994, and was diagnosed with groin strain. A form completed by a doctor at Lallie Kemp on December 8 stated he should rest for five days and see a genitourinary specialist.
He was seen by Dr. Robert B. Kidd, a Hammond urologist, on December 27, 1994, upon defendant's referral. Kidd found positive tenderness in the right lower abdomen and recommended an abdominal ultrasound, which was performed on February 3, 1995. That test was negative. On March 7, 1995, Kidd's diagnosis was epididymal cyst. He advised defendant's claims agency that plaintiff was "free to do light activities up to March 29, 1995." He stated he wanted to reassess plaintiff on that date. Plaintiff returned to Kidd on May 10, 1995, with continued complaints of right-lower-quadrant pain radiating to his right scrotum. Kidd found definite tenderness over the epididymis and definite fullness and tenderness in the head of the epididymis. However, he found no evidence of a hernia or strained tendon. Kidd advised Kleamenakis that activity could aggravate plaintiff's testicular pain, but he could perform non-strenuous work. He also was concerned that plaintiff might have a colonic problem or, barring that, might need a right epididymectomy.
Kidd saw plaintiff twice more before trial, on November 29, 1995, and on February 28, 1996. In November he had the same symptomatology, but with the addition of weakness in his right leg and side. By February 1996, Kidd had decided that the abdominal pain, which radiated from the right lower quadrant around to plaintiff's back, was possibly musculoskeletal rather than genitourinary, and that the epididymectomy would be unnecessary. He stated he would like to have an orthopedist examine plaintiff.
Plaintiff testified he could not see Kidd as often as Kidd wanted because of uncertainty whether defendant would pay for treatment. While seeing Kidd, he was also being treated at Lallie Kemp. He was seen in the outpatient clinic on January 18, January 31, June 30, July 21, August 10, August 14, August 24, and October 9, 1995. Several of those visits included treatment for a congenital hand deformity, but on each visit the groin strain was mentioned. On August 14 he was advised to avoid heavy lifting. In February 1995 he underwent an abdominal CT scan, which was negative, and in October 1995 he was referred for a kidney ultrasound. According to plaintiff, he was last seen at Lallie Kemp April 10, 1996, the day before the trial. He stated that two or three months before the trial two doctors at Lallie Kemp agreed he has a torn abdominal muscle. However, the medical records from Lallie Kemp filed herein stop in October 1995.

Occurrence of an Accident
The hearing officer found claimant's actions following the date of the accident verified an accident occurred. He stated plaintiff's account of the accident was consistent, and nothing in the record contradicted his account. While acknowledging that an accident at work can be proven by the claimant's uncontradicted testimony,[6] defendant submits plaintiff failed to carry his burden of proof because of "suspicious circumstances" surrounding the claim. Defendant lists the following circumstances it contends belie the occurrence of an accident: (1) plaintiff failed to report the accident the night it happened, (2) no one witnessed the accident, (3) plaintiff "refused" to take a drug test, (4) plaintiff had *1285 an on-the-job injury with a prior employer (which did not involve his groin), which he did not report when applying for work with defendant, (5) plaintiff missed ten days of work during five months in defendant's employ, and (6) plaintiff's physical complaints are vague and change in character.
We agree with the hearing officer that these circumstances do not contradict plaintiff's account of the accident. Plaintiff presented a reasonable explanation for failing to report the accident the night it occurred. Furthermore, the law is clear that an employee who finishes a day's work without reporting an accident is not barred from recovering compensation on that basis alone.[7] Plaintiff did not engage in histrionics when he first felt groin pain but continued to work, hoping the pain would pass, which probably explains why there were no witnesses to the accident. He denied he refused the drug test, and even Stanga attributed part of the problem in scheduling the test to difficulty in contacting plaintiff. The nurse who scheduled the test did not testify.
Plaintiff stated he did not recall a question on defendant's employment application about prior workers' compensation claims. Stanga stated there was such a question on the application, but the form was not introduced. Defendant does not explain in its brief why plaintiff's absences from work, which could be attributed to many different reasons, should make this accident suspicious. Finally, plaintiff has consistently complained of right groin pain, and every doctor who has treated him has found right-lower-quadrant tenderness. His treating physicians' inability to unequivocally diagnose the cause of this pain is not a reflection of plaintiff's credibility.

Accident-related Disability
Defendant contends the hearing officer erred in finding plaintiff proved he sustained a temporary total disability as a result of the accident. Whether plaintiff is entitled to temporary total disability benefits is a question of fact, and this court will not disturb a hearing officer's determination unless it is clearly wrong.[8] The hearing officer's factual findings as to disability and length thereof in a workers' compensation case are entitled to great weight and should not be disturbed absent manifest error.[9]
Benefits for temporary total disability shall be awarded only if a claimant proves by clear and convincing evidence that he is physically unable to engage in any employment.[10] A claimant is entitled to temporary total disability benefits if he shows he is disabled at the time of trial and is still undergoing medical testing with an indefinite recovery period, yet it appears reasonably certain he will be able to engage in gainful occupation within a foreseeable period of time.[11]
The medical evidence in this case is less than ideal. No doctors testified either in person or by deposition. Instead, the parties relied on the medical records of Waldo, Kidd, and Lallie Kemp. The hospital records are all handwritten and are difficult to read. Yet, we have carefully reviewed these records and plaintiff's testimony and find they provide a reasonable factual basis for the hearing officer's finding that plaintiff is entitled to temporary total disability benefits.
When last seen by Waldo, plaintiff was unable to return to work. Plaintiff testified his groin pain has been "very constant" and has prevented him from working since the accident. His medical records reflect consistent complaints of right groin pain since the accident.
Kidd opined in March 1995, based on his diagnosis of a genitourinary problem, that plaintiff could perform non-strenuous work. Plaintiff testified he did not feel he could work, and it appears Kidd's opinion as to the source of plaintiff's pain has changed since *1286 March 1995. After his last examination of plaintiff in February 1996, he felt the source of the problem could be musculoskeletal and recommended an orthopedic consultation. Plaintiff testified the most recent diagnosis by doctors at Lallie Kemp is that his pain is caused by a torn abdominal muscle.
In determining whether a claimant has discharged his burden of proof, the trier of fact should accept as true a witness's uncontradicted testimony, even though the witness is a party, absent circumstances casting suspicion on the reliability of that testimony.[12] A hearing officer's determinations of whether a claimant's testimony is credible and whether he has discharged his burden of proof are factual determinations which will not be disturbed upon review absent manifest error.[13] The hearing officer herein found credible plaintiff's testimony that he was unable to work due to groin pain. The hearing officer's ruling that plaintiff suffered an accident-related disability entitling him to temporary total disability benefits was not manifestly erroneous.

Intervening Disability
Defendant also contends even if plaintiff suffered a disabling accident, his continued disability is due to a congenital condition affecting his hands. There is little in the record regarding this hand condition other than notes from the Lallie Kemp outpatient clinic. Nothing in those notes indicates the condition is disabling. Plaintiff testified he has suffered from this condition since birth and had been able to maintain employment before the accident despite the hand problem. He testified that the strength in his hands has lessened as he has aged and that he would have trouble working now because of his hands, but he never testified his hands would prevent him from working. We find no merit in defendant's contention plaintiff suffers from an intervening disability.

WAS DEFENDANT ARBITRARY AND CAPRICIOUS?
Defendant contends it was in possession of medical evidence indicating plaintiff could return to work when it terminated plaintiff's benefits and thus the hearing officer erred in finding it was arbitrary and capricious. Defendant terminated plaintiff's weekly compensation benefits on December 1, 1994. There is not a scintilla of medical evidence in the record to support defendant's contention that plaintiff could have returned to work on that date. Kleamenakis testified Waldo released plaintiff to return to full-duty work after two missed appointments, but Waldo's records show neither missed appointments nor a release to return to work. The report from plaintiff's last visit to Waldo on November 30, 1994, is inconclusive at best. Waldo indicated he felt plaintiff should improve in a few days, but at that point he had not ruled out the existence of a hernia or worsening epididymitis.
An employer or insurer who terminates compensation benefits in an arbitrary and capricious manner, or without probable cause, is subject to penalties and attorney fees.[14] Those penalties and fees may not be assessed if the claim is reasonably controverted.[15] The test of whether the employee's right has been reasonably controverted turns on whether the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.[16] If the employer or insurer fails to investigate the employee's claim, it subjects itself to penalties and attorney fees.[17]
Thus, an injured employee's compensation benefits may not be terminated *1287 based on inconclusive medical reports.[18] An employer or insurer must make reasonable efforts to ascertain the employee's exact medical condition before terminating benefits.[19] Termination of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee's condition.[20]
This obligation is continuing in nature. If an insurer or employer first receives an optimistic medical report, but later receives information indicating the possibility of continuing disability, it may not blindly rely on the earlier report to avoid penalties and attorney fees.[21] Furthermore, if it receives information that an employee is only partially disabled, it may not terminate all compensation; to do so subjects it to penalties and attorney fees.[22]
In this case, defendant failed to make any effort to ascertain plaintiff's exact medical condition before terminating his benefits. Plaintiff was forced to seek treatment through the state charity hospital system, and there is no indication in the record that defendant ever considered those medical records. Defendant was clearly arbitrary and capricious in terminating compensation benefits to plaintiff, and the hearing officer was not manifestly erroneous in so finding.
For the foregoing reasons, the judgment of the office of workers' compensation administration is affirmed at defendant's costs.
AFFIRMED.
NOTES
[1] Judge Ralph E. Tyson of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In filing the form LDOL-WC 1008 (on which the caption herein is based), plaintiff misspelled defendant's name and listed Helmsman Management, Inc., as defendant's insurer. Defendant is self-insured. Helmsman made no appearance in this suit.
[3] Buckbee v. United Gas Pipe Line Co., 561 So.2d 76, 85-87 (La.1990); Malbrough v. Wallace, 594 So.2d 428, 432 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992).
[4] See La.Code Evid. art. 801(C).
[5] See La.Code Evid. art. 901(A).
[6] Nelson v. Roadway Express, 588 So.2d 350, 353 (La.1991).
[7] Id. at 353.
[8] Augustus v. St. Mary Parish School Board, 95-2498, p. 5 (La.App. 1st Cir. 6/28/96), 676 So.2d 1144, 1150.
[9] Montana v. City of New Orleans, 95-1701, p. 5 (La.App. 4th Cir. 6/5/96), 682 So.2d 239, 243, writ denied, 96-2981 (La.1/31/97), 687 So.2d 412.
[10] La. R.S. 23:1221(1)(c).
[11] Montana, 95-1701, pp. 5-6, 682 So.2d at 243.
[12] Bruno v. Harbert Int'l, 593 So.2d 357, 361 (La.1992).
[13] Augustus, 95-2498, p. 4, 676 So.2d at 1149.
[14] La. R.S. 23:1201(F) and 1201.2.
[15] La. R.S. 23:1201(F)(2).
[16] Ceasar v. Crispy Cajun Restaurant, 94-30, p. 8 (La.App. 3d Cir. 10/5/94), 643 So.2d 471, 477, writ denied, 94-2736 (La.1/6/95), 648 So.2d 931.
[17] Nelson v. Roadway, 588 So.2d at 355.
[18] Salvador v. Slidell Indus., 415 So.2d 511, 515 (La.App. 1st Cir.1982).
[19] Orgeron v. Tri-State Road Boring, 434 So.2d 65, 69 (La.1983); Salvador, 415 So.2d at 515.
[20] LeBlanc v. Cajun Painting, 94-1609, p. 14 (La.App. 1st Cir. 4/7/95), 654 So.2d 800, 809, writs denied, 95-1706, 95-1655 (La.10/27/95), 661 So.2d 1349, 1350.
[21] Walker v. Gaines P. Wilson & Son, 340 So.2d 985, 988 (La.1976); Cochennic v. Dillard's Dept. Store Warehouse, 95-705, p. 11 (La.App. 5th Cir. 1/17/96), 668 So.2d 1161, 1167, writ denied, 96-0419 (La.3/15/96), 669 So.2d 417.
[22] Watson v. Amite Milling Co., 560 So.2d 902, 907-908 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990).