762 So.2d 18 (1999)
Darrell L. PAGE
v.
Earl PAGE and Louisiana Workers' Compensation Corporation.
No. 98 CA 1625.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*19 Debra K. Talbot, Baton Rouge, LA, Counsel for Defendant/Appellant Louisiana Workers' Compensation Corporation.
William R. Mustian, III, Metairie, LA, Counsel for Plaintiff/Appellee Darrell L. Page.
BEFORE: GONZALES, FITZSIMMONS, and WEIMER, JJ.
WEIMER, J.
In this workers' compensation case, a judgment was rendered in favor of claimant, Darrell Page, and against defendants, Louisiana Workers' Compensation Corporation (LWCC), and Earl Page.[1] After a thorough review of the record, we vacate a portion of the judgment, reverse in part, and affirm in part.

FACTS
Prior to his on-the-job accident, Darrell L. Page had worked as a carpenter for his uncle, Earl Page. Darrell began working for his Uncle Earl upon finishing high school and was employed for approximately ten years prior to the accident. Carpenter crews employed by Earl normally consisted of three carpenters and three carpenter's helpers. When weather and job availability allowed, they worked a full day, from 7:00 a.m. until 4:00 or 5:00 p.m., five days a week. Darrell testified at trial that he was paid $90.00 per day, whereas the carpenter's helpers were paid $5.00 per hour.
It is undisputed that Darrell, who is right handed, sustained an accident during the course and scope of his employment on October 11, 1995, when a skill saw slipped and cut his left hand. He was hospitalized for surgery to the injured hand. LWCC, Earl's workers' compensation insurer, paid Darrell's medical expenses plus workers' compensation benefits for temporary total disability until December 30, 1996, but at a rate calculated on part-time employment.
At issue at the trial were claimant's entitlement to continued benefits for temporary total disability, the amount of the benefits, entitlement to vocational rehabilitation services, and entitlement to a penalty and attorney's fees for arbitrary and capricious termination of benefits. The Office of Workers' Compensation (OWC) judge rendered judgment in claimant's favor ordering defendants to provide claimant *20 with vocational rehabilitation services; to pay benefits for temporary total disability calculated on earnings of $450.00 per week from October 11, 1995, subject to a credit for all compensation previously paid; and to pay a penalty of $1,000.00 and attorney's fees of $3,500.00.
On appeal, LWCC urges the OWC judge erred in making all of the above awards.

DISCUSSION
Our review of this workers' compensation case is governed by the manifest error standard.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." (Citations omitted.)
Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556.
In the instant case, for the reasons that follow, we conclude that the OWC judge was presented with two permissible views concerning all of the disputed issues. Therefore, the OWC judge's factual findings were neither manifestly erroneous nor clearly wrong.
In addition to the documentary evidence consisting of medical reports and correspondence, the record consists of the testimony of the claimant and two defense witnesses. All three witnesses referred to conversations with the deceased, Earl Page. No one objected.
Elier Diaz was the vocational rehabilitation consultant retained by the defense to evaluate Darrell's chances of returning to work. He reviewed the medical records and met with Earl to determine if Darrell could return to work with his former employer. Mr. Diaz testified he had concerns that Earl could not draft a letter offering Darrell his former job modified for his physical limitations. Therefore, Mr. Diaz drafted a letter which he sent to claimant through claimant's attorney. Mr. Diaz never spoke with the claimant personally, and never interviewed him or tested him. Once Mr. Diaz procured the agreement with Earl that Darrell could return to work in a modified capacity, he did not proceed further to investigate other jobs that claimant could do with his physical limitations. His approach, according to his testimony, was to wait and then evaluate whether the claimant could perform his former job which was to be modified for his limitations.
When questioned about returning to a job as carpenter, Darrell stated he could no longer perform the work with only one good hand and limited use of the injured hand. Darrell testified that although he saw Earl every weekend during the time period the vocational rehabilitation expert was in contact with him, his former employer never made him a job offer.

ADDITIONAL VOCATIONAL REHABILITATION
The LWCC argues on appeal that the OWC judge erred in finding that claimant needed further vocational rehabilitation. Actually, the OWC judge found that claimant never received meaningful vocational rehabilitation. In oral reasons for judgment, the OWC judge stated:
I don't think this man should have been taken off Workers' Compensation until he had had full vocational rehabilitation counselling which he did not [have] according to Mr. Diaz'[s] testimony. To *21 have proper vocational rehabilitation counselling, I think this case should have been discussed with the Claimant and the jobs gone over in detail and that they should have found more jobs than strictly one job that he most probably could not do as a carpenter. The nature of the carpenter's work and the fact that the doctor said he couldn't use one of his hands would have prevented him from taking this old job even modified as they said because of the weightlifting and the reaching and pulling and so forth.
I think that the Claimant is due full vocational rehabilitation so that they can explore what he actually can do and what fields he can go into with his background of education and his physical limitations at this time.
Our review of the record convinces us the OWC judge's conclusions concerning the need for rehabilitation is consistent with the statutory mandates and the jurisprudence. Rehabilitation is required by LSA-R.S. 23:1226, which provides in pertinent part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
Although Mr. Diaz relied on the fact that he had made arrangements for Darrell to return to his former employment with job duties being modified, option (b) of LSA-R.S. 23:1226 B(1), we agree with the OWC judge that his efforts did not satisfy the requirement of adequate rehabilitation services. The parameters of adequate vocational rehabilitation have been explained in the jurisprudence.
Before an appropriate option can be chosen from the list of alternatives in La.R.S. 23:1226, important rudimentary questions need answers. For this reason, vocational rehabilitation must begin with a vocational evaluation. An accurate evaluation pulls from several independent sources in order to fully identify and document the injured worker's needs, limitations, and skills. A thorough rehabilitation counselor will consult medical records, treating physicians, and just as importantly, the client/injured employee. In addition, appropriate forms of skills and achievement tests should be utilized.
. . . .
The importance of developing a personal history on a client/injured worker through face-to-face interviews cannot be overemphasized. It is during personal meetings that a counselor can assess a worker's overall abilities to enter the work force once again. Careful attention is to be placed on the client's social, educational, and vocational histories in order to establish the client's level of expertise in given fields as well as his ability to adapt to different work settings. It is inconceivable that a rehabilitation counselor would attempt to return a worker to suitable employment without getting answers to primary questions; in no other realm of counselor-client relationships would such manifest lack of regard for the well-being of the client be tolerated. Vocational rehabilitation should be no exception.
. . . .
*22 Throughout the rehabilitation process, close communication should be maintained with the client/injured worker who is, after all, the beneficiary of the services. The culminating part of the evaluation process is an information session during which the counselor reviews the fruits of his research in order that there be a mutual understanding of the means and purpose of the rehabilitation process. Furthermore, a communication session provides for the opportunity to ascertain the accuracy of the counselor's research as well as recent changes that may affect the process.
A final noteworthy benefit of the counselor's maintaining open communication with the client/injured worker is that the duties of each can be clearly defined. Contrary to frequent practice, rehabilitation does not end with providing the client with a list of jobs. The client may require further help such as interview skills training, resume writing skills, and further vocational training. It is the duty of the vocational rehabilitation counselor to aid the client in returning back to work with as little retraining as possible, not leave a client with a list of inappropriate jobs based on impersonal information and consider the service completed. (Citations omitted.)
Livings v. Langston Companies, Inc./Continental Bag Division, 96-636, pp. 14-16 (La.App. 3 Cir. 12/5/96), 685 So.2d 405, 413-414.
When Mr. Diaz was asked if he considered himself to be in a counseling relationship with Darrell, he responded "absolutely not" and indicated his client was LWCC and not Darrell. Because the vocational rehabilitation expert in the instant case had no contact with the injured worker whatsoever, the OWC judge was correct in ordering the defendant to provide adequate rehabilitation services.
The LWCC cites three cases from this circuit in support of its argument that it was error for the OWC judge to order vocational rehabilitation. All three cases are distinguishable on the facts.
In George v. Broadmoor Construction, 96-1074 (La.App. 1 Cir. 3/27/97), 692 So.2d 22, this court held that the employer provided claimant with meaningful vocational rehabilitation services. The services as described by this court were quite extensive in contrast to the minimal efforts made by the consultant in the instant case.
In Rosata v. K-Mart Corporation, 95-0526 (La.App. 1 Cir. 11/9/95), 665 So.2d 89, writ denied, 95-2952 (La.2/9/96), 667 So.2d 533, the claimant was an unskilled worker, who was offered another unskilled job with fewer physical demands. The OWC did not order vocational rehabilitation. This court affirmed on the ground that the evidence showed employment was available for the claimant within her medical restrictions and at the same level as her pre-injury wages. By contrast, in the instant case the OWC judge found the job offer was not realistically within the physical limitations placed on claimant by his doctor. We cannot say that finding is manifestly erroneous.
In Noveh v. Broadway, Inc., 95-2081 (La.App. 1 Cir. 5/10/96), 673 So.2d 349, writ denied, 96-1431 (La.9/13/96), 679 So.2d 109, the employer offered rehabilitation services to the claimant numerous times and the claimant refused, opting instead to pursue a college education on a full time basis. This court held the claimant was not entitled to have her educational costs paid as a rehabilitation service.
Considering the facts of the instant case, the Livings case quoted above, with its thorough discussion of vocational rehabilitation, is more on point than the cases cited by LWCC in support of their argument that the OWC judge erred in ordering vocational rehabilitation for Darrell. This assignment of error is without merit.

CONTINUED DISABILITY BENEFITS
Having held the OWC judge was correct in finding that Darrell was entitled *23 to rehabilitation pursuant to LSA-R.S. 23:1226, we also conclude there was no error in determining Darrell was unable to return to work absent a rehabilitation program. Consequently, he was entitled to receive benefits for temporary total disability from the time of his injury and continuing during the time he may be receiving proper rehabilitation services. See Miller v. Byles Welding & Tractor Company, 96-164, p. 5 (La.App. 3 Cir. 6/5/96), 676 So.2d 665, 668. LWCC's assignment of error challenging the award of benefits for temporary total disability is without merit.

AMOUNT OF BENEFITS
The OWC judge awarded weekly benefits in the amount of $300.00, based on an average weekly wage of $450.00. Obviously, as the trier of fact, he accepted Darrell's trial testimony that he earned $90.00 a day and worked five days a week for his employer prior to his injury.
Janell Hayes, a claims representative for LWCC, testified at trial that she had been in contact with Earl concerning claimant's status as a part-time employee working less than 40 hours per week. She testified Earl reported his nephew Darrell was a part-time employee who had worked for three weeks prior to the accident, was paid for the days he worked, and that Earl said his nephew was voluntarily working less than forty hours; however, this testimony was contradicted by Darrell's testimony that he was a full time employee who had worked for 10 years. As previously stated, Earl was deceased at the time of trial and (at the risk of stating the obvious) could not be called as a witness to verify the testimony of any of the witnesses.
The LWCC argues on appeal that the claimant reported, at various times prior to trial, various amounts of wages. Additionally, LWCC points to the wage report signed by Earl showing $80.00 per day as Darrell's wages. However, Darrell's testimony at trial contradicted this evidence. We note that at the end of the trial, the court called the claimant back to the stand, and the OWC judge, himself, questioned Darrell about his pay and his hours of work. The OWC judge's determination as to whether the worker's testimony is credible is a factual determination not to be disturbed on review unless clearly wrong or manifestly erroneous. Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2 Cir.), writ denied, 536 So.2d 1200 (La.1988). For an appellate court to reverse a workers' compensation judge's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding or that the record establishes that the finding is clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
In light of the conflicting evidence concerning the amount of pre-injury wages, we cannot say it was manifest error for the OWC judge to accept Darrell's testimony. This assignment of error is without merit.

PENALTIES AND ATTORNEY'S FEES
The applicable statutory authority (LSA-R.S. 23:1201(F) or LSA-R.S. 23:1201.2) for assessing an insurer with penalties and attorney's fees depends upon whether the insurer did not commence the payment of benefits in a timely fashion or discontinued benefits that had been timely paid. In Darrell's case, the insurer discontinued benefits, which was the same factual situation confronting the Louisiana Supreme Court in Williams v. Rush Masonry, Inc., 98-2271, (La.6/29/99), 737 So.2d 41. In that case the court made it clear that section 1201.2, as amended in 1995, applies only when an insurer or employer discontinues payment of benefits, not when there has been a failure to commence or pay benefits timely. Williams, *24 98-2271, p. 4, 737 So.2d at 45. Section 1201.2 provides:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
The distinction drawn in Williams is significant because now both penalties and attorney's fees are recoverable under section 1201(F) if the employer or insurer fails to commence payments of benefits timely or to pay continued installments timely (or to pay medical benefits timely) unless the claim is reasonably controverted. However, only attorney's fees generally are now recoverable under section 1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due. Id. Thus, in the instant case, we must reverse the award of a $1,000.00 penalty made by the OWC judge.
Next, we must consider whether LWCC was arbitrary and capricious in discontinuing benefits so as to warrant an award of attorney's fees pursuant to LSA-R.S. 23:1201.2. An employer or insurer must make reasonable efforts to ascertain the employee's exact condition before terminating benefits. Termination of benefits may be considered arbitrary when it appears that further information was required to make an exact determination of the employee's condition. See Porter v. Gaylord Chemical Corporation, 98-0222, pp. 9-10 (La.App. 1 Cir. 9/25/98), 721 So.2d 27, 32, writ denied, 98-2712 (La.12/18/98) 734 So.2d 638. Whether the imposition of penalties and attorney's fees is warranted is a factual question which will not be disturbed on appeal in the absence of manifest error. Id. at 10, 721 So.2d at 32-33.
In the instant case, LWCC contends that at the point it offered Darrell employment within the restrictions placed upon him by his treating physician and because he declined to accept that position, it was no longer liable for weekly indemnity benefits. We disagree. As previously stated, Darrell was entitled to adequate rehabilitation services. The minimal attempt at rehabilitation made by the vocational rehabilitation consultant hired by LWCC did not provide LWCC sufficient grounds to discontinue payment of benefits.
Thus, we find no error in the OWC judge's determination that LWCC was arbitrary and capricious in terminating those benefits. See Miller, 96-164 at 7, 676 So.2d at 668. Accordingly, LWCC was properly deemed liable to Darrell Page for attorney's fees.

CONCLUSION
Considering the nullity of the judgment against Earl Page, we vacate that portion of the judgment that casts him in judgment. Considering the error of law made in awarding a $1,000.00 penalty in favor of Mr. Page, we reverse that portion of the judgment. However, having found no manifest error on the part of the OWC judge in any of the findings of fact and no abuse of discretion in the other awards made, we affirm the remainder of the judgment in favor of Mr. Page and against LWCC. We cast LWCC for all costs of this appeal.
JUDGMENT VACATED IN PART; REVERSED IN PART; AFFIRMED IN PART.
FITZSIMMONS, J., concurs.
NOTES
[1] Earl Page, the claimant's employer, was deceased at the time of trial. His estate was not substituted as a party defendant. Nevertheless, the judgment being appealed purports to cast him in judgment. Additionally, the attorney for LWCC brings this appeal on behalf of both defendants. Although the issue has not been raised by the parties, we note that the judgment against Earl Page is an absolute nullity. Although LSA-C.C.P. art. 801 permits a substitution of parties whenever a party dies during the pendency of an action, a substitution could not cure the nullity of that portion of the judgment which casts Earl Page in judgment. It is well settled that a judgment for or against a deceased person is an absolute nullity. White v. Givens, 491 So.2d 63, 64 (La.App. 1 Cir.1986). Accordingly, the portion of the judgment appealed from which was rendered against Earl Page is declared a nullity and is vacated and set aside.