649 So.2d 1155 (1995)
Thomas E. MARTIN, Plaintiff-Appellee,
v.
RED SIMPSON, INC., and Travelers Insurance Company, Defendants-Appellants.
No. 94-817.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*1156 John Taylor Bennett, for Thomas E. Martin.
Steven J. Bienvenu, for Red Simpson, Inc. et al.
Before WOODARD, DECUIR and PETERS, JJ.
WOODARD, Judge.
In this workers' compensation case, the defendants appeal a judgment awarding plaintiff reinstatement of temporary total disability benefits and medical expenses for treatment of a right shoulder injury and blackout spells.

FACTS
On September 22, 1988, the plaintiff, Thomas Martin, who was employed by Red Simpson, Inc., was injured in the course of his employment when a co-employee who was working above him on top of a power line dropped a "squeeze-on" wrench, weighing approximately twenty pounds, striking him in his upper back between the shoulder blades. Mr. Martin continued to work as a lineman, albeit in pain, until September 6, 1989, when Dr. Norman Anseman, a specialist in physical medicine and rehabilitation, advised him to stop working because of his recurring blackout spells.
Red Simpson, Inc.'s workers' compensation insurance carrier, Travelers Insurance Company (Travelers), paid Mr. Martin $262.00 per week from the time he stopped working until December 8, 1992, when it decided no medical evidence indicated that his blackout spells or right shoulder injury were related to the work accident. Subsequently, Mr. Martin filed suit against Red Simpson, Inc. and Travelers for reinstatement of his benefits. The case was tried on October 1, 1993 and judgment was entered on March 9, 1994, awarding Mr. Martin reinstatement of temporary total disability benefits from the time they were terminated and payment of his reasonable and necessary medical expenses for treatment of the right shoulder injury and blackout spells.
Defendants appeal and assert the following assignments of error: The hearing officer erred in finding (1) that the testimony of Mr. Martin was credible; and, (2) that his blackout spells and right shoulder injury were caused by the work accident.

LAW

CREDIBILITY
It is well settled that a court of appeal may not set aside a trial court's finding of fact unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). When *1157 findings are based on determinations regarding credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations and demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Id. In the case sub judice, the hearing officer had the opportunity to observe and listen to Mr. Martin testify at the hearing and found that his testimony was credible. After a thorough review of the record, we conclude that the hearing officer's finding was not clearly wrong.

CAUSATION
An employee in a workers' compensation case initially has the burden of establishing by a preponderance of the evidence that his employment accident caused his disability. Pelous v. Martin, 520 So.2d 1042 (La.App. 3 Cir.1987), writ denied, 522 So.2d 565 (La.1988). In order for an employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2 Cir. 1990), writ denied, 573 So.2d 1134 (La.1991). The issue of disability presents a legal, not a purely medical question, which must be determined through a consideration of both lay and medical testimony. Taylor v. Louisiana-Pacific Corp., 602 So.2d 48 (La.App. 3 Cir.), writs denied, 606 So.2d 541, 542 (La. 1992). The employee's work accident is presumed to have caused his disability when the employee proves that: (1) before the accident, he had not manifested the disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and, (3) there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985).
In the case sub judice, Mr. Martin testified that before the work accident he was in good health and never suffered from blackout spells or pain in the neck, upper back, and shoulders. This was corroborated by Dr. John Hearn, his family physician, who stated that he had not treated him for any of these symptoms prior to the work accident. Immediately after the accident, he was taken to the emergency room at Highland Park Hospital where medical records indicate that he had two abrasions on his back and was suffering from pain in his upper back. Mr. Martin stated that, commencing with the accident, he began suffering from: headaches; pain in his neck, shoulders, and upper back, between his shoulder blades; and, within six weeks, blackout spells.
Dr. Hearn, who treated Mr. Martin for approximately two years, diagnosed him with traumatic myoligamentous strain of the posterior neck and thorax on December 9, 1988. Also, about two weeks later, Dr. Hearn diagnosed his blackout spells as "vaso-vagal attacks," a sympathetic neurological disorder, which Dr. Hearn opined "could have occurred" as a result of his work accident.
Mr. Martin additionally sought treatment from Dr. Robert Holladay, an orthopedic surgeon, who treated him for approximately fifteen months. Dr. Holladay diagnosed him with chronic cervical and thoracic syndrome on November 12, 1990, because he had been suffering headaches and continual pain for two years in his neck, in the upper back between his shoulder blades, and on the top of both shoulders. Even though Dr. Holladay did not formally diagnose his rotator cuff problem in the right shoulder until September 1991, Dr. Holladay opined that it would be "fair to assume" that Mr. Martin had this injury the entire time because it causes pain in the neck and in the back between the shoulder blades, which are symptoms he had been suffering continuously since the work accident. Finally, Dr. Holladay stated that: (1) it would be hard for him to explain how someone would get a torn rotator cuff without some traumatic event; (2) it is "possible" that the rotator cuff is work related; and, (3) his blackout spells "could have been related" to the work accident.
Once an employee establishes the presumption of a casual relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than *1158 not that the injury was not caused by the work accident. Walton, supra. The effect of the presumption is not so slight and evanescent that it is spent and disappears upon the mere production of evidence by the employer. Id.
In the case sub judice, the defendants attempted to rebut the presumption that the work accident caused Mr. Martin's torn rotator cuff in his right shoulder by introducing into evidence a medical report from Dr. Norman Morin, an orthopedic surgeon, who examined him once at the request of Travelers for diagnostic purposes. In his report to Travelers, Dr. Morin opined that the rotator cuff injury was not caused by the work accident; however, he gave no explanation for this conclusion. We find that this "mere production" of evidence by the defendants was not sufficient to rebut the presumption, because the testimony of a treating physician should be given more weight than that of a physician who examined a claimant for diagnostic purposes since his conclusions are based on repeated examinations and sustained observations of the patient. DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1 Cir.), writ denied, 530 So.2d 568 (La.1988). The defendants also tried to rebut this presumption by arguing that the rotator cuff was not work related because (1) it was not formally diagnosed until almost three years after the accident; and, (2) Mr. Martin continued to work for one year after the accident. However, a potential workers' compensation claimant should not be barred from recovery because he does not formally diagnose the full extent of the injury immediately after its occurrence, nor should a worker be penalized for trying to work as much as he can, despite the pain. See Guilbeaux v. Martin Mills, Inc., 640 So.2d 472 (La.App. 3 Cir.1994).
The defendants rely heavily on the testimony of Dr. M. Riad Hajmurad, a neurologist, to support their position that the blackout spells were not caused by the accident because there are no objective symptoms. However, Dr. Hajmurad admitted that a neurological injury would not always be manifested by "objective signs of injury to the head." Further, after Dr. Hajmurad reviewed the medical records and the nature of the work accident, he stated that he could not "really tell" if Mr. Martin's blackout spells were related to the work accident. Again, this "mere production" of evidence was not sufficient to rebut the presumption that Mr. Martin's blackout spells were caused by the work accident.
After a close examination of the record, we conclude that the hearing officer was not clearly wrong in finding that Mr. Martin's disabling symptoms, blackout spells and torn rotator cuff in the right shoulder, were caused by the work accident. See Baker v. Conagra Broiler Co., 640 So.2d 494 (La.App. 3 Cir.1994).

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed against the defendants.
AFFIRMED.