| WOODARD, Judge.
In this workers’ compensation litigation, we have to determine whether the Workers’ Compensation Judge (WCJ) erred when he found that Ms. Betty Faye Willis did not meet her burden of proving that she was disabled and entitled to workers’ compensation medical and indemnity benefits. We find that the trial court committed legal and manifest error, and after conducting a de novo review of the record, we hold that Ms. Willis met her burden of proving, by a preponderance of the evidence, her disability and entitlement to medical benefits. Furthermore, our thorough review of the record reveals that she also met her burden of proving, by clear and convincing evidence, her entitlement to Total Temporary Disability (TTD) benefits. We-reverse.
$ $ $ ‡ ‡ $
Ms. Betty Faye Willis claims that she sustained a wrist injury, on May 6, 1997, while in the course and scope of her employment with Alpha Care Home Health (Alpha). Her job duties consisted of providing stroke, heart, and paralyzed patients with home assistance regarding various tasks such as getting dressed, bathing, and grooming. She “would have to help [the patients] out of the bed, assist them in
a wheelchair, bathe them, feed them, grooming [sic], light house work.”
Her injury occurred when she and Ms. Florence Scott, another Alpha employee, moved a paralyzed patient out of a rocking chair onto his wheelchair. Ms. Willis placed her left arm under his right arm and her right hand under his right leg. Apparently, both she and Ms. Scott lifted the patient and placed him onto his wheelchair, but as they sat him down, Ms. Willis jammed her right hand between the patient’s leg and the wheelchair. She immediately called Ms. Scott and the patient’s spouse who raised the patient’s leg and to release her hand.
Ms. Willis felt immediate pain in her right wrist, and Ms. Scott applied rubbing alcohol on it. Her pain did not disappear, and when an Alpha nurse, Ms. Becky Baronet, entered the patient’s house, Ms. Willis explained her predicament. Ms. Baronet instructed her to report the accident to Mr. Robert Littell, an Alpha supervisor, which she did. He agreed with Ms. Willis that she should consult with a physician and told her to have the physician send him the bill.
| ?Before the accident, Dr. Clifton Young, Ms. Willis’ treating physician, had last examined her in February of 1996 in a routine, school related visit. She did not disclose any right hand related problem. Further, it is not disputed that she could physically fulfill her job duties before the accident.
On May 7, 1997, she visited Dr. Young and explained to him that she had injured her right wrist while carrying a patient. She also complained about suffering from neck and shoulder pain, but she did not offer any other complaints regarding her right hand. Although Dr. Young did not see any motion deficit in her hand, he noted some tenderness localized over her right wrist, as well as her neck’s right side and her trapezius area. He opined that she had "a bruised right wrist and explained that Ms. Willis’ wrist, neck, and shoulder pain could be consistent with car *508 pal tunnel syndrome, which in his opinion necessitated that she undergo nerve conduction studies. He referred her to a neurologist. He acknowledged that she also suffered from depression for which he prescribed anti-depressants. He placed her off work and did not release her until July of 1998. When asked why he released her in July, he stated that both her physical and mental condition had significantly improved. He last saw her on May 10, 1999 and noted that she did not report anymore complaints.
Dr. Young referred Ms. Willis to Dr. John Patrick Schutte, an orthopaedic surgeon. After the initial May 29, 1997 visit, Dr. Schutte reported the following:
[Ms. Willis] apparently was lifting a patient from a wheelchair to a rocking chair and the weight of the patient fell on her hand. She had immediate pain, reported it to the supervisor, went to see Dr. Young that P.M. and now has persistent pain in the palm of her hand. She states that it’s throbbing pain. She complains of numbness and tingling with pain radiating up and down into her neck.
[[Image here]]
On today’s evaluation, the patient has limited motion' of her hand due to pain although she has a 16 degree of dorsi-flection, seven degrees of volar flexion.
[[Image here]]
I think Betty probably strained her wrist, but is having symptoms beyond what her physical findings demonstrate. At this point, I think that a wrist brace would be appropriate.
13Then, after a June 5, 1997 visit, he noted:
[N]ow she is having continued problems with pain. I had put her in a brace and she states that she is better, but still having significant problems with motion.
[[Image here]]
I don’t see why this patient is still having problems with pain. She has no swelling, has excellent range of motion of her wrist, she has normal sensation. She states she is much better with the splint on, but as soon as she takes the splint off she basically guards her hand and protects it throughout its range of motion.
[[Image here]]
I will ask her to see Dr. Porubsky in Appaloosas [sic] and see what he feels in regards to her hands.
Dr. Schutte also reviewed the x-rays he ordered and noted that they did not reveal the existence of any bony abnormalities. He opined that “Betty probably had sprained her wrist[J” When asked whether he placed Ms. Willis under any restrictions, he stated that he “probably would have had her not use her wrist to do heavy lifting,” which, in effect, prohibited her from pursuing her work as a nurse’s aid. Unable to diagnose Ms. Willis’ pain etiology, he attempted to refer her to Dr. Po-rubsky, apparently another orthopedic surgeon, but Alpha denied the referral.
Alpha did not pay Ms. Willis’ workers’ compensation indemnity benefits, did not pay for her visit to Dr. Young, and refused to allow her to undergo nerve condition studies or to be referred to a neurologist. Instead, it challenged her claim that she sustained injuries and insisted, without any supporting medical evidence, that her alleged disability, if any, was related to a 1990 hand accident, which she experienced while working at a Sonic restaurant. Mr. Randall Joseph Hebert, Alpha’s claim’s manager in Ms. Willis’ case, stated that he thought of this case as a “nothing case;” that Dr. Young never placed Ms. Willis’ off work; and that he denied her referral, as he believed that she was doctor shopping. Ms. Willis filed suit on May 5, 1998 to recover workers’ compensation benefits. After a hearing on November 18, 1999, the trial court denied her claim to both medical and indemnity benefit. She appeals.
* * * =¡c *
Workers’ Compensation Judge’s Findings
Ms. Willis asserts that the Workers’ Compensation Judge (WCJ) erred in *509 finding that she failed to establish that she was disabled from the time of her injury to July of 1998. Specifically, in its reasons for judgment, the trial court stated:
The Court finds that Ms. Willis history was not consistent with her testimony, considering she told Dr. Schutte about pain to the palm of her right hand, despite telling Dr. Young about pain to the right wrist. The incident report by Mike Littel indicated that Ms. Willis injured her right hand, not her wrist.
Ms. Willis did give reasonable notice by reporting the accident to her supervisor Mike Littel [sic] on the date of the accident. However, it has been documented, and admitted by Ms. Willis that she had a pre-existing hand injury, called a neuroma, on her right hand, indicated by a healed surgical scar between the third and fourth metacarpals [sic]. Moreover, Ms. Willis’ inconsistent complaints of wrist and palm pain, with no objective signs of injury found by her treating physicians, Dr. Young and Dr. Schutte, all indicate that Ms. Willis most assuredly suffered a pre-existing injury to the right hand, that may have been aggravated or exacerbated by the alleged accident. The problem is that the surveillance admitted into evidence shows that Ms. Willis could use her right hand to perform daily tasks such as driving, and opening and closing car doors, despite her allegations to the contrary. Ms. Willis’s complaint are not credible to the court on the issue of disability to the right hand.
Finally, as previously discussed, Ms. Willis’ alleged injury to her right hand was not corroborated by the medical evidence, including the reports and depositions of Drs. Young and Schutte, who both could not find any objective signs of injury to support Ms. Willis subjective complaints. As such Ms. Betty Willis claims for indemnity benefits and medical benefits are denied.
We disagree with the WCJ’s legal conclusions and find manifest error with his factual findings.
First, as a reason for his denial, the WCJ stated that Ms. Willis suffered a preexisting injury to her right hand which the alleged accident may have aggravated or exacerbated. In West v. Bayou Vista Manor, Inc.,[1] the supreme court held that a prejexisting,5 latent disability would not preclude an employee from recovering benefits. Specifically, it stated that “workers’ compensation benefits are payable when a work accident aggravates or accelerates [the pre-existing injury], producing disability.”[2] In the case sub judice, the record reflects that Ms. Willis suffered an injury to her right hand when working at a Sonic restaurant in 1990. However, it is also unrebutted that she was able to perform her duties, consisting among other things, in lifting paralyzed patients, a task which she claimed to be unable to accomplish after the accident. Furthermore, where her previous injury had affected her hand’s metacarpal area, Dr. Young diagnosed her most recent condition as a sprained wrist.
In addition, we find that the WCJ’s decision is fraught with manifest error. For example, he found that Ms. Willis was inconsistent in making complaints because, one time, she complained about her right wrist as having been injured and, another, about her right palm. He apparently concluded that these complaints would have to mean two separate types of injuries. However, after thoroughly reviewing the record, we find no medical or other evidence indicating the “inconsistent” character of such complaints, especially in view of Dr. Young having found decreased motion in her hand, resulting from the instant accident. Moreover, neither Dr. Young, *510 nor Dr. Schutte opined that her complaints were inconsistent. We find no evidence in the record supporting the WCJ’s analysis; thus, the WCJ’s manifestly erred in its specific findings.
In its reasons for judgment, the WCJ gave much weight to a videotaped surveillance, showing Ms. Willis walking her children from their school bus to her apartment complex, going up and down the stairs of her apartment complex, and driving her van, as well as opening and closing its doors. Accordingly, the 'WCJ found Ms. Willis’ complaints not to be credible. After reviewing the videotaped surveillance, we are not impressed by its probative value. Instead, on many instances where Ms. Willis had to use her hands, she actually used her left hand. Once, she opened her van’s door with her right hand and again used her right hand to steer her van’s steering wheel. However, she most frequently opened and closed her van’s door with her left hand. Furthermore, she did not use her right hand to keep her | ^balance when using the guardrail to go up or down her apartment complex stairs. In fact, most frequently, she did not use her hands at all to accomplish such tasks but, instead, went up or down the stairs without using the guardrail. Finally, the videotape does not show her undertaking any efforts coming even remotely close to those required when having to lift a paralyzed person from a wheelchair. We find no conclusive evidence in the videotaped surveillance which may cast a doubt on Ms. Willis’ credibility. Having found that the WCJ manifestly erred, we review the relevant issues before us de novo.
Disability/Causation
In a workers’ compensation case, an injured employee has the burden of proving, by a preponderance of the evidence, that her employment accident caused her disability.[3] We have defined the word “accident” as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently!.]”[4] In the instant case, Alpha does not seriously rebut that Ms. Willis suffered an accident. Indeed, the record reveals that she immediately complained of an injury to her right hand upon moving a patient onto his wheelchair, and the patient, his wife, and her co-worker all witnessed the event.
Additionally, an employee may recover workers’ compensation benefits when the record reveals that the employment somewhat caused or contributed to the disability, though the disability’s exact cause need not be found.[5] Whether an employee is disabled does not purely depend upon a medical question but, rather, hinges upon consideration of both lay and medical testimony.[6] A presumption of disability and causation may be found upon proving the following factors: (1) no manifestation of disabling symptoms before the accident; (2) the disabling symptoms appeared after the accident; and (3) medical or circumstantial evidence indicate a | Treasonable possibility of causal connection between the accident and the medical condition’s activation.[7]
In the case sub judice, the record reveals that Ms. Willis did not feel any wrist pain before the injury. She visited Dr. Young in February of 1996 and did not describe any such complaint. Further, she was able to lift patients before her accident, but, immediately thereafter, she became unable to tend to the type of duties which her Alpha employment required. The day after she sustained her accident, Dr. Young diagnosed her with a sprained wrist and placed her off work. He felt *511 that her complaints could be consistent with that of carpal tunnel syndrome and ordered that she follow nerve conduction studies and visit a neurologist. However, Alpha denied his recommendation and referral. Instead, it took the position, without clearly stating so, that Ms. Willis was a malingerer and ordered that Ms. Willis be subjected to an investigation, yielding a videotaped surveillance, which we have found to be unprobative. Upon declining to follow the medically prescribed course of action, Alpha failed to rebut Ms. Wiílis’ claim, as it possibly could have had it chosen to determine whether she actually sustained an injury. Accordingly, we find that Ms. Willis carried her burden of proving that she was disabled.
Medical Benefits
We must determine whether Alpha improperly denied her claim to medical benefits.
It is well settled that an employer has the duty to furnish all necessary medical expenses and treatment to an injured employee.[8] Specifically, our workers’ compensation scheme provides that “the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment ... and shall utilize such state, federal, public or private facilities as will provide the injured employee with such necessary services.”[9] The employee also has the right to his | ^choice of a treating physician.[10] Additionally, that physician may seek whatever consultations are medically necessary to determine the employee’s course of treatment.[11]
In Dozier v. Goran’s, Inc., we held that an injured worker is entitled to medical expenses to ascertain his medical condition.[12] Nevertheless, an employee has the burden of proving, by a preponderance of the evidence, that he may recover the costs of diagnostic tests, which his treating physician recommends, if they are needed to determine the proper treatment[13] and are related to a work accident.[14]
Whether Ms. Willis suffered an accident is hardly debated. Upon lifting a patient, she felt immediate pain and had to seek help to release her hand from underneath the patient. She immediately filed an accident report and visited Dr. Young the following day. Although Alpha paid Dr. Schutte, it failed to pay any of Ms. Willis’ visits to Dr. Young. Furthermore, after Dr. Young referred her to Dr. Schutte. He also referred her to a neurologist and ordered nerve condition studies to determine her pain etiology; because, as he explained, her complaints could have been consistent with symptoms associated with carpal tunnel syndrome. However, Alpha neither authorized the neurologist referral, nor the nerve conduction study, and did not pay for Dr. Young’s visits.
After thoroughly reviewing the record, we find that Ms. Willis met her burden of proving, by a preponderance of the evidence, that her visits to Dr. Young, her nerve conduction study, and her referral to a neurologist were necessary to determine her proper treatment. Accordingly, we find that Alpha improperly denied Ms. Willis the medical benefits to which she was entitled under our workers’ compensation laws. We order that Alpha reimburse Ms. Willis for the expenses which she in *512 curred when visiting Dr. Young for her wrist injury.
| {¡Indemnity Benefits
In the instant case, Dr. Young stated that he placed Ms. Willis off of work from May 7, 1997 to July of 1998. He diagnosed her with a sprained wrist and found some decreased motion in her hand. Although he appeared to be at a loss regarding her continuing pain etiology, he did not rule out the possibility that her symptoms could be associated with carpal tunnel syndrome. He ordered a nerve conduction study and referred her to a neurologist. However, Alpha denied the referral and the examination. And being without insurance, Ms. Willis was unable to afford them on her own.
Nevertheless, Alpha never exercised its right to have her consult a second physician for diagnostic purposes. It has failed to present evidence which would rebut Ms. Willis’ clear and convincing evidence that she was totally disabled from May 7, 1997 to July of 1998, when Dr. Young released her to return to work. .Accordingly, we order that Alpha pay her TTD benefits for this period.
Penalties and Attorney’s Fees
An employee is entitled to penalties and attorney’s fees when the employer arbitrarily, capriciously, or without probable cause fails to timely pay workers’ compensation benefits.[15] In effect, this law describes an employer which fails to reasonably controvert the employees’ claim.[16] An employer is deemed to have reasonably controverted a claim when it possessed sufficient factual and medical information to rebut the employee’s factual and medical assertions.[17]
Accordingly, an employer may not deny an injured employee’s benefits on the basis of inconclusive medical reports. Instead, the employer must undertake a reasonable effort to ascertain the extent of the employee’s medical condition.[18] Thus, |inan employer’s denial of workers’ compensation benefits is arbitrary and capricious when the employee’s medical condition assessment requires additional tests.[19]
We 'need not entirely reiterate the facts which we have already set forth to find that Alpha fell woefully short of having-undertaken a reasonable effort to ascertain Ms. Willis’ condition. Ms. Willis saw a generalist, who placed her off work and diagnosed a sprained wrist, and an orthopedist, who, essentially, confirmed the diagnosis and certainly corroborated the opinion that she could not return to her pre-injury activities. Alpha did not exercise its right to have her see another physician for diagnosis, but refused to grant Dr. Young’s referral to a neurologist in order to ascertain her problem. Instead, it resorted to having an investigator follow and make a videotape, which we have already found to be of a weak probative value. When it chose such a route on which to deny Ms. Willis’ benefits, it acted arbitrarily and capriciously.
Accordingly, Ms. Willis is entitled to receive penalties and attorney’s fees. We award her $7,500.00 as attorney’s fees. Regarding penalties, in LeJeune v. Trend Services, Inc.,[20] we held that “an employee is entitled to one maximum penalty of $2,000.00 for failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for failure to timely pay any and all medical benefits.” Accordingly, we award Ms. Willis $4,000.00 in total penalties for Alpha’s arbitrary and *513 capricious denial of, both, medical and indemnity benefits.
CONCLUSION
The WCJ erred when it he found that Ms. Willis failed to prove her entitlement to workers’ compensation benefits. Reviewing the record de novo, we determine that Alpha arbitrarily and capriciously failed to provide Ms. Willis with her due medical benefits for Dr. Young’s visits, as well as for his recommended nerve conduction studies and a neurologist visit. Finally, clear and convincing evidence in the record reflects that Ms. Willis was totally disabled during the period of time in which Dr. Young placed her off of work, May 7, 1997 to July of 1998. Accordingly, we find Alpha liable to pay Ms. Willis TTD benefits during this time and award her $4,000.00 hfin total penalties and $7,500.00 in attorney’s fees. We cast Alpha with the costs of the appeal.
REVERSED AND RENDERED.

. 371 So.2d 1146 (La.1979).

. Id. at 1149; see also City of Eunice v. Credeur, 99-302 (La.App. 3 Cir. 10/13/99), 746 So.2d 146, reversed on other grounds 99-3249 (La. 1/28/00), 753 So.2d 226.

. Martin v. Red Simpson, Inc., 94-817 (La.App. 3 Cir. 2/1/95), 649 So.2d 1155.

. Gary v. Econo-Mart No. 10, 98-201 (La.App. 3 Cir. 6/3/98), 716 So.2d 51, 53.

.Martin, 649 So.2d 1155.

. Id.

. Walker v. Halliburton, 93-722 (La.App. 3 Cir. 3/1/95), 654 So.2d 365.

. Knotts v. Snelling Temp., 27,773 (La.App. 2 Cir. 12/6/95), 665 So.2d 657.

. La.R.S. 23:1203(A).

. City of Jennings Police Dept. v. Dorr, 96-244 (La.App. 3 Cir. 6/26/96), 676 So.2d 1128.

. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95), 651 So.2d 444.

. 94-1363 (La.App. 3 Cir. 4/5/95), 653 So.2d 137.

. Scott v. Town of Jonesville, 96-41 (La.App. 3 Cir. 7/3/96), 676 So.2d 1196.

. Malbrue v. St. Landry Sch. Bd., 95-1426 (La.App. 3 Cir. 1/17/96), 673 So.2d 1157.

. Gordon v. Sandersons Farms, 96-1587 (La.App. 1 Cir.5/9/97), 693 So.2d 1279.

. Brown v. Texas-La Cartage, Inc., 98-1063 (La. 12/1/98), 721 So.2d 885.

. Gordon, 693 So.2d 1279.

. Id.

. Id.

. 96-550, p. 9 (La.App. 3 Cir. 6/4/97), 699 So.2d 95, 101.